UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

UNITED STATES OF AMERICA

    -v-                                                    No. 19-CR-427 (LTS)

LARRY FARMER,

        Defendant.

-------------------------------------------------------x

MEMORANDUM ORDER

The Court has received Defendant Larry Farmer's motion for a reduction in sentence pursuant to 18 U.S.C. section 3582(c)(1)(A). (Docket entry no. 46, the "Motion.") On November 12, 2019, upon pleading guilty, Mr. Farmer was convicted of firearms trafficking in violation of 18 U.S.C. section 922(a)(1)(A), 924(n), and 2. (Docket entry no. 27.) On March 12, 2020, Mr. Farmer was sentenced to 60 months of imprisonment followed by 3 years of supervised release. (Docket entry no. 32.) After several extensions of his surrender date, Mr. Farmer surrendered to the Bureau of Prisons ("BOP") custody on May 13, 2021, and is currently incarcerated at McKean Federal Correctional Institution ("FCI McKean"). (Motion at 1; Docket entry no. 48, Opposition to Motion ("Opp.") at 2.) He is expected to be released from BOP custody on or about August 12, 2025. (Opp. at 2.)

In the present Motion, Mr. Farmer seeks a reduction in his sentence or a designation of home confinement, arguing principally that the COVID-19 pandemic, his health conditions, and the conditions at FCI McKean constitute "extraordinary and compelling reasons" to reduce his sentence. (See Motion at 1-12.). On August 27, 2021, the Government filed its Opposition to the Motion, and on September 16, 2021, Mr. Farmer filed his Reply (docket entry

no. 49 ("Reply")). The Court has reviewed the parties' submissions carefully and, for the following reasons, Mr. Farmer's Motion is denied.

## DISCUSSION

Mr. Farmer seeks an order directing his compassionate release under 18 U.S.C. section 3582(c)(1)(A), which provides, in relevant part, that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 117-80).[1] The Court therefore considers "the factors set forth in section 3553(a) to the extent that they are applicable," and then considers, in light of those factors, whether the defendant's proffered "extraordinary and compelling reasons" for a sentence reduction warrant such a reduction. The sentencing factors set forth in 18 U.S.C. section 3553(a) are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [by the Sentencing Guidelines] . . . ; (5) any pertinent policy statement [issued by the Sentencing Commission in effect on the date the defendant is

---

[1] The Government does not dispute that Mr. Farmer has exhausted his administrative remedies as required under section 3582(c)(1)(A).

> sentenced] . . .; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C.A. § 3553(a) (Westlaw through P.L. 117-80).

In making its determination, the Court may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release" in determining whether those reasons warrant a sentence reduction. United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020). "The defendant has the burden to show he is entitled to a sentence reduction" under section 3582(c)(1)(A). United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

Here, the Court previously considered each of the section 3553(a) factors at the time of Mr. Farmer's sentencing on March 12, 2020. As for the "nature and circumstances of the offense," the Court noted that Mr. Farmer "sold nine firearms, two of which were determined to have been stolen, and 147 rounds of ammunition to an undercover law enforcement agent over the course of seven separate controlled buys." (See docket entry no. 35 ("Sentc. Tr.") at 15.) He "bought the firearms in other states" and then "transported them to New York to sell them illegally," at times using "straw buyers" and "devis[ing] ruses" to hide the guns. (Id.) The Court found Mr. Farmer's crime to be "deeply serious" and "warrant[ing] significant punishment" due to the major threat that gun violence poses "to lives and to communities." (Id. at 16.)

As for Mr. Farmer's "personal history and characteristics," the Court noted that Mr. Farmer had a "difficult upbringing," and that he "got involved with crime at a young age," but also managed to complete his GED while in prison. (Id.) Later in life, he married and had two children, and became a "family oriented man," but he experienced further hardship when he lost his young son and a car accident left him "injured and unable to consistently remain

employed." (Id. at 16-17.)  This financial hardship was what "reportedly drove him to commit this offense," and Mr. Farmer expressed remorse for his crime.  (Id. at 17.)  The Court also noted that this was Mr. Farmer's "fourth offense," with previous convictions for attempted robbery and possession of controlled substances, and that the need for both specific and general deterrence was significant.  (Id. at 17-18.)  Having considered those factors, as well as others identified on the record, the Court sentenced Mr. Farmer to 60 months of imprisonment, to be followed by a three-year term of supervised release.  (Id. at 20-21.)

In the time that has passed since Mr. Farmer's sentencing, it appears that these facts and circumstances remain generally unchanged.  Accordingly, with the section 3553(a) factors in mind, the Court next considers whether Mr. Farmer has now presented extraordinary and compelling reasons which warrant a reduction in his sentence.

First, Mr. Farmer argues that he should be released due to the general risk that the COVID-19 virus poses to incarcerated populations, and the harsh conditions at FCI McKean in particular.  Mr. Farmer notes the heightened risks that prisons pose for infection due to the confined spaces, overcrowding, and lack of consistent sanitation.  He submits that inmates are estimated to be five times more likely to contract the virus than the average U.S. adult population, and that to date over 244 inmates have died of COVID-19 while in BOP custody.  As for FCI McKean, Mr. Farmer states that the prison has ignored concerns of overcrowding and has continued to increase its inmate population since the pandemic began.  He asserts that the institution lacks adequate staff and medical personnel to deal with outbreaks, and that inmates are not regularly tested for the virus.

While Mr. Farmer's concerns are legitimate, as numerous federal courts have noted, "the mere existence of COVID-19 in society and the possibility that it may spread to a

particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020); see also United States v. Stevens, 459 F. Supp. 3d 478, 486 (W.D.N.Y. 2020) ("[T]he mere *possibility* of contracting a communicable disease such as COVID-19, without any showing that the Bureau of Prisons will not or cannot guard against or treat such a disease, does not constitute an extraordinary or compelling reason for a sentence reduction under the statutory scheme."). Moreover, BOP Statistics demonstrate that, of the 902 inmates currently housed at FCI McKean, only three inmates are testing positive as of the current date, and though numerous inmates were previously infected and recovered, there has not been a single COVID-19-related death at this institution. See BOP, COVID-19 Cases, www.bop.gov/coronavirus (last visited Jan. 4, 2022); (Opp. at 4.) Thus, although the risk exists, these figures do not indicate extraordinary and compelling circumstances warranting relief.

Mr. Farmer further argues that his health condition places him at a greater risk of severe illness if he were to be infected with COVID-19. Specifically, he states that he is obese and has a Body Mass Index ("BMI") of approximately 33, which renders him more vulnerable to serious complications from the virus. (Motion at 7.) It is true that obesity (i.e., BMI ranging from 30 to 40) may place a person at a greater risk of suffering severe illness related to COVID-19. See Centers for Disease Control ("CDC"), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 4, 2022); (Motion at 7.) As noted in the Government's opposition, however, Mr. Farmer is only 35 years old, and is "fully ambulatory and engages in all normal activities of daily living." (Opp. at 2)

Courts have routinely denied compassionate release based on mild obesity alone, particularly when the defendant is relatively young and has no additional health issues. See, e.g.,

United States v. Hilario, No. CR-18-161, 2021 WL 322899, at *3 (E.D. Pa. Feb. 1, 2021) ("Given Defendant's relative youth (33 years old) and his lack of other risk factors, his mild obesity [BMI of 32] does not constitute an extraordinary and compelling reason for his release."); United States v. Figueroa, No. 04-CR-515-KAM, 2020 WL 6873433, at *3 (E.D.N.Y. Nov. 23, 2020) (concluding that the defendant's "mild obesity" and hypertension were "insufficient to warrant a sentence modification"); United States v. Newton, No. 3:18-CR-0022-8-VLB, 2020 WL 6784267, at *6 (D. Conn. Nov. 18, 2020) (holding that the defendant's mild obesity and controlled asthma did not establish "extraordinary and compelling reasons for his release, particularly in view of . . . his [young] age, and the state of the virus at FCI Danbury").

        Significantly, Mr. Farmer received the Johnson & Johnson vaccine on June 4, 2021. (Opp. at 2.) Courts have consistently denied compassionate release when the defendant is fully vaccinated, even when other health conditions are present. See, e.g., United States v. Johnson, No. 94-CR-631-PGG, 2021 WL 640054, at *5 (S.D.N.Y. Feb. 18, 2021) (finding no "extraordinary and compelling reasons" where inmate suffering from obesity had been vaccinated, as "[t]he Defendant's vaccination mitigates the risks that he would otherwise face from the COVID-19 virus"); United States v. Morel, No. 10-CR-798-PAC, 2021 WL 2821107, at *1 (S.D.N.Y. July 7, 2021) (determining that the defendant's health conditions, which included hypertension and obesity, were not "extraordinary and compelling" because the defendant "is fully vaccinated and FCI Danbury has zero active cases of COVID-19").

        Mr. Farmer maintains that vaccination alone cannot prevent the threat posed by COVID-19, that vaccine effectiveness begins to wane after time, and that breakthrough infections have occurred in vaccinated people due to the Delta variant. There is some truth to these claims, but such generalized statements about vaccine efficacy do not amount to

extraordinary and compelling circumstances—the vaccine is still highly effective at preventing death and serious injury, even against the Delta and Omicron variants.  See United States v. Jones, No. 17-CR 214-CM, 2021 WL 4120622, at *2 (S.D.N.Y. Sept. 9, 2021) ("[R]ecent data confirms that the COVID-19 vaccines dramatically reduce the risk of death and serious illness from the various variants of COVID-19, even the dreaded Delta Variant."); Centers for Disease Control, Delta Variant: What we Know about the Science, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last visited Jan. 4, 2022) ("The COVID-19 vaccines approved or authorized in the United States are highly effective at preventing severe disease and death, including against the Delta variant."); Centers for Disease Control, Omicron Variant: What You Need to Know, https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last visited Jan. 4, 2022) ("Current vaccines are expected to protect against severe illness, hospitalizations, and deaths due to infection with the Omicron variant."); BOP, COVID-19 Vaccine Implementation, www.bop.gov/coronavirus (last visited Jan. 4, 2022) (showing that 893 inmates at FCI McKean have been fully inoculated).

        Mr. Farmer also asserts that the conditions of his confinement have been particularly harsh and restrictive, "marked by months of lockdowns, isolation in quarantine, fear of infection, and a lack of access to programing."  (Reply at 5.)  He contends that the unanticipated harshness of his time in captivity merits a correspondingly shorter sentence.  While the Court is sympathetic to the poor conditions many prisoners have faced during the pandemic, generalized statements about the conditions of confinement do not constitute compelling reasons for compassionate release.  See Stevens, 459 F. Supp. 3d at 487 (determining that the "conditions of confinement" caused by the pandemic—such as lack of visitation, lack of programing, and

threat of infection—do not "constitute extraordinary or compelling reasons for a sentence reduction"); United States v. Padilla, No. 18-CR-454-6, 2020 WL 3958790, at *1 (S.D.N.Y. July 13, 2020) (denying motion for compassionate release while recognizing that petitioner had "identified sub-optimal conditions of confinement at FCI Elkton during the pandemic," such as the lack of drug abuse programs and counseling).

Finally, Mr. Farmer urges the Court to reconsider the 3553(a) factors, arguing in particular that he poses a low risk of recidivism and would not be a danger to the community if released. He asserts that he has strong ties to his community and to his family, and that he could easily find employment if released due to his professional certifications. He further states that he has made significant efforts to reform himself while incarcerated, by participating in prison programming and by exhibiting good behavior. The Government, however, argues that the 3553(a) factors still counsel strongly against Mr. Farmer's release, as his firearms crimes posed a grave risk to the community, and there remains a need for just punishment and general and specific deterrence. The Government also notes that Mr. Farmer did not surrender to BOP custody until May 13, 2021, and to date has served less than one year of his 60-month sentence.

The Court agrees with the Government that the 3553(a) factors do not weigh in favor of Mr. Farmer's release. As the Court noted at Mr. Farmer's sentencing, his crimes were "deeply serious" and "had potential for very extreme danger to the community." (Sentc. Tr. at 16-18.) The Court also emphasized "the need for specific deterrence of future unlawful activity by Mr. Farmer, who is not a first-time offender;" the "substantial need for general deterrence of others who might hope to reap financial benefits by trafficking firearms;" and "the need for the protection of the public." (Id. at 19.) These concerns are still present today, especially given that Mr. Farmer has only served approximately seven months of his five-year sentence. See United

States v. Bullock, 833 F. App'x 934, 935 (3d Cir. 2021) (denial of compassionate release appropriate in light of the defendant's significant criminal history and the "substantial time remaining to be served on [his] sentence").  And while Mr. Farmer's rehabilitative efforts are commendable, they likewise do not rise to extraordinary and compelling circumstances which would merit his release.  See Padilla, 2020 WL 3958790, at *1 ("The Court also commends Mr. Padilla for the rehabilitative efforts he has undertaken in prison, but finds them similarly insufficient to warrant the [compassionate release] he now seeks.").

In sum, as a result of Mr. Farmer's vaccination, he now has significant protection against serious illness due to COVID-19, and his obesity does not qualify as an "extraordinary and compelling reason" to grant his motion for compassionate release.  While the Court commends the efforts that Mr. Farmer has taken to rehabilitate himself while incarcerated, and recognizes that the conditions of his confinement may have been more restrictive than usual, these factors are likewise insufficient to reach the high threshold of "extraordinary and compelling" reasons, and—especially when weighed against the serious nature of the crime and the substantial time remaining on his sentence—do not warrant a reduction in sentence.

<u>Conclusion</u>

For the reasons set forth above, Mr. Farmer's motion for compassionate release pursuant to 18 U.S.C. section 3582(c)(1)(A) is denied. The Court will also enter an Order on Motion for Sentence Reduction Under 18 U.S.C. section 3582(c)(1)(A), certifying the denial of the Motion. Copies of this Memorandum Order and the Order on Motion will be mailed to Mr. Farmer. Docket entry no. 46 is resolved.

SO ORDERED.

Dated: New York, New York
January 5, 2022

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

**Copy to be mailed to:**
Larry Farmer
Reg. No. 76308-054
FCI McKean
Federal Correctional Institution
P.O. Box 8000
Bradford, PA 16701

Larry Farmer
Reg. No. 76308-054
FCI Allenwood
Federal Correctional Institution
P.O. Box 2000
White Deer, PA 17887